DAIMLER MFG. CO. et al. v. CONKLIN.

(Circuit Court of Appeals, Second Circuit. April 13, 1909.)

No. 196.

PATENTS (§ 258*)— INFRINGEMENT — USE OF ARTICLE BROUGHT FROM FOREIGN COUNTRY.

 The use of an article covered by a United States patent in the United States can no more be controlled by foreign law than its sale can, and a purchaser of such an article in a foreign country, although from one there authorized to sell it, is chargeable with infringement if he brings it into the United States and there uses it.

 [Ed. Note.—For other cases, see Patents, Cent. Dig. § 398; Dec. Dig. § 258.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 160 Fed. 679.

Howard Taylor and Francis H. Kinnicutt, for appellants.
H. M. Earle (John Ingle, Jr., of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is an appeal from a decree dismissing a bill to restrain the infringement of United States patents for mechanical devices in automobiles. The defendant purchased the automobile abroad from a person authorized to sell the patented improvements there. The complainants sought to enjoin the use of the machine in the United States on the ground that the defendant had no license of any kind from the United States patentee to use the devices in question.

After the expiration of a patent the subject of the patent obviously becomes a public property. An extension of the original patent was formerly regulated in this country by statute. Section 18 of the act of July 4, 1836 (5 Stat. 124, c. 357), provides that patents may be extended seven years by a board composed of the Secretary of State, the Commissioner of the Patent Office, and the Solicitor of the Treasury, if they shall be satisfied that, having due regard to public interest, it is just and proper that the patent should be extended. This application may be made by the executor or administrator of the patentee. Wilson v. Rousseau, infra. This eighteenth section concludes with the following words:

"And thereupon the said patent shall have the same effect in law as though it had been originally granted for the term of twenty-one years. And the benefit of such renewal shall extend to assignees and grantees of the right to use the thing so patented, to the extent of their respective interests therein: Provided, however, that no extension of a patent shall be granted after the expiration of the term for which it was originally issued."

At present patents in this country are issued for a fixed term, without any provision for an extension.

"Every patent shall contain a short title or description of the invention or discovery, correctly indicating its nature and design, and a grant to the

patentee, his heirs or assigns, for the term of seventeen years, of the exclusive right to make, use, and vend the invention or discovery throughout the United States, and the territories thereof, referring to the specification for the particulars thereof. A copy of the specification and drawings shall be annexed to the patent and be a part thereof." Rev. St. U. S. § 4884 (U. S. Comp. St. 1901, p. 3381).

The United States thus gives to patentees three distinct and independent rights within its own territory, viz., the right to make, the right to use, and the right to sell. Under the act of 1836 the only right conferred by grant or assignment to third parties under the original patent which continued in them under the extension was the right to use the patented article, and this was secured by the clause above quoted. The monopoly of the patent generally was continued for the extended term in the patentee or his executors or administrators, not in his assignees or grantees. The Supreme Court so decided in Wilson v. Rousseau, 4 How. 646, 11 L. Ed. 1141, in the case of the Woodworth planing machine. Justices McLean, Wayne, and Woodbury dissented, on the ground that the clause was applicable not to the original patent at all, but only to the extension. The court pointed out the difference between grants of the right to make and sell under the original patent and the right of a purchaser of a patented article to use it. The former, being a part of the franchise conferred by the patent, terminates with it, while a patented article which has been sold has passed beyond the monopoly of the patent for all time, and is saved in the purchaser or his vendee from the operation of the renewed monopoly. In the opinion of the court nothing was thus saved to grantees by the act of 1836 but the right to use the patented articles by persons who bought them during the term of the original patent, but this seems to include the right to sell the specific articles. Paper Bag Cases, 105 U. S. 766, 771, 26 L. Ed. 959.

February 26, 1845, Congress passed a special act further extending the term of the patent to Woodbury for his planing machine for seven years. 6 Stat. 936, c. 27. The question arose as to the effect of this act upon users of machines purchased under the original or extended patent. The Supreme Court held that the special act was to be treated as ingrafted on the general law, and, nothing being said in it as to the rights of users, they were to be deemed protected as before. Bloomer v. McQuewan, 14 How. 539, 14 L. Ed. 532. Justice McLean dissented, on the ground that these rights were not protected by section 18 of the act of 1836; and Justice Nelson, who wrote the opinion of the court in Wilson v. Rousseau, dissented without giving any reasons.

The discussion in both the foregoing cases turned upon the construction of the clause in the eighteenth section of the act of 1836 above mentioned. All that was said by the court about the inherent difference between the right to use and the right to make and sell patented articles was said in support of the construction put upon that clause, and not as a substantive and independent reason why the right to use continued, irrespective of the clause. That such rights exist only by statutory provision is to be inferred from Rev. St. U. S. § 4899 (U. S. Comp. St. 1901, p. 3387):

"Every person who purchases of the inventor, or discoverer, or with his knowledge and consent constructs any newly invented or discovered machine, or other patentable article, prior to the application by the inventor or discoverer for a patent, or who sells or uses one so constructed, shall have the right to use, and vend to others to be used, the specific thing so made or purchased, without liability therefor."

Another line of authorities begins with Adams v. Burks, 17 Wall. 453, 21 L. Ed. 700, holding (Justices Bradley, Swayne, and Strong dissenting) that whoever purchases an article covered by letters patent of the United States from one having the right to make and sell the same within a defined territory may use it anywhere throughout the United States. Mr. Justice Miller referred to Wilson v. Rousseau and Bloomer v. McQuewan, not as deciding the question under consideration, but as analagous cases. In construing Rev. St. U. S. § 4884 he cited the reasoning used in them to construe section 18 of the act of 1836, viz., that the sale of a patented article takes it out of the limit of the monopoly. In Hobbie v. Jennison (C. C.) 40 Fed. 887, Judge (afterwards Mr. Justice) Brown held that the principle of this decision was as applicable to the sale as to the use of the article, which view was adopted by the Supreme Court in the same case on appeal. 149 U. S. 355, 361, 13 Sup. Ct. 879, 37 L. Ed. 766. The language of the court in these cases, as well as in Wade v. Metcalf, 129 U. S. 202; 9 Sup. Ct. 271, 32 L. Ed. 661, Boesch v. Graff, 133 U. S. 697, 10 Sup. Ct. 378, 33 L. Ed. 787, and Keeler v. Standard Folding Bed Co., 157 U. S. 659, 15 Sup. Ct. 738, 39 L. Ed. 848, as to the right to use or sell, must be understood to mean to use or sell within the United States, the territory which the letters patent cover. It cannot be supposed that the court was speaking of a right to use or sell in other countries, where our laws have no force. In the case of Boesch v. Graff the defendant purchased patented burners in Germany from a person authorized to sell them, which he imported into the United States for sale. The court held that such a sale was an infringement of the rights of the owner of the United States patent covering the same articles. The right to use in such cases was not under consideration, and as far as we can discover has never been considered by the courts. Because the court declared the right to sell an infringement and quoted largely from the earlier cases discussing the difference between the right to use and the right to make and sell a patented article, the court below inferred that the use of such an article would not be an infringement. We think this does not follow. The use of articles covered by a United States patent within the United States can no more be controlled by foreign law than the sale can. The sale by a German patentee of a patented article may take it out of the monopoly of the German patent, but how can it take it out of the monopoly of the American patentee who has not sold?

As the late Judge Townsend said in Fetherstone v. Ormonde Cycle Co. (C. C.) 53 Fed. 110, the purchaser abroad cannot get any greater right than the patentee has from whom he buys. It is true he was speaking of a sale; but we perceive no more reason for thinking that the foreign patentee can use the patented article in the United States

in violation of the right granted by the United States patent to use and grant to others the right to use the patented article within the United States.

The decree is reversed, with costs.